JANE B. STRANCH,
dissenting.
Respectfully, I cannot join the majority opinion. I have no quarrel with the majority’s statement of the legal principles applicable to our analysis, but if the entirety of the evidence is viewed in the light most favorable to Calvin Wilhite, as case law requires, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), then genuine disputes of material fact exist for trial on whether the statute of limitations bars his claims. Because summary judgment for the defendants is inappropriate on this record, I would reverse and remand.
The majority relies heavily on certain excerpts from the deposition testimony of Dr. Nwozo and Dr. Azimi to support the defendants’ position that Wilhite was mentally competent to manage his own affairs by March 31, 2008, as the district court found. The testimony of these physicians simply does not so clearly favor the defendants. Disputes of material fact remain.
On page 503 of the opinion, the majority points to Dr. Nwozo’s testimony that Wil-hite twice refused a dental soft diet on February 25 and March 2, 2008, and on both occasions Dr. Nwozo counseled Wil-hite about the legal aspects of his decision and required him to sign Refusal of Medical Services forms. This evidence is presented as proof that Wilhite was sufficiently mentally competent to understand his legal rights when he signed the forms.
Dr. Nwozo’s testimony is so internally contradictory that a jury could seriously question whether to believe any of it. Dr. Nwozo first testified that it was his responsibility to advise Wilhite about the ramifications of rejecting a dental soft diet and that he personally counseled Wilhite on February 25 and March 2 before Wil-hite signed the refusal forms on those dates. Dr. Nwozo further insisted that he “wouldn’t have allowed [Wilhite] to sign” the forms if he thought Wilhite was mentally incompetent.
Dr. Nwozo later admitted, however, that he did not personally provide counseling before Wilhite signed the forms. A nurse on the floor conducted the counseling and Dr. Nwozo was not even present to hear what the nurse or Wilhite said. He also admitted that he simply initialed the refusal forms the day after Wilhite signed them. Therefore, Dr. Nwozo’s testimony does not support the defendants’ position that Dr. Nwozo personally counseled Wilhite and found him to be mentally competent to sign the forms.
At page 503 of the opinion, the majority faults Wilhite for his failure to “explain how Dr. Nwozo allegedly acquired [the] personal knowledge” that Wilhite was taking “required pain medication” in late March and early April 2008, yet the medical record did not include any documentation of a pain medication order. Wilhite did explain. He pointed to portions of Dr. Nwozo’s deposition testimony that the defendants themselves produced.
Dr. Nwozo testified that Wilhite was prescribed a dental soft diet because his fractured jaw was wired shut and “because *506 they (sic)<tcan’t chew ... we put them (sic) on pain medication for the pain.” When asked by defense counsel if he ordered pain medication for Wilhite, Dr. Nwozo answered, “I can’t remember.” When defense counsel asked if any pain medication that was ordered would be reflected in the discharge summary, Dr, Nwozo responded: “Sometimes we do; sometimes, you know, we don’t — sometimes we don’t specify all the medication in the discharge summary.” This testimony fails to support the defense position that Wilhite was not on pain medication and was mentally competent when he was discharged from the Deberry hospital facility and placed in a regular room to await transfer back to HCCF. Rather, the testimony raises another genuine dispute of material fact that is appropriate for jury resolution, not summary judgment.
Dr. Azimi’s testimony is also not conclusive as to whether Wilhite was mentally competent to manage his affairs by March 81, 2008. Dr. Azimi conducted one brief, routine mental-status screening of Wilhite, probably in early February 2008.[1] The screening lasted for “very brief moments,” was conducted through the screen door to Wilhite’s room while he was in bed, and involved no psychological testing. Although Dr. Azimi testified that Wilhite was “very cooperative,” he also stated that Wil-hite offered brief answers to questions indicating that “he did not want to continue with me.” By Dr. Azimi’s own admission, it was “not a very comprehensive screening,” and when asked if he drew any conclusions about whether Wilhite was mentally incompetent, Dr. Azimi answered: “[Ijncompetent, I mean, I don’t know ... I think he was competent to discuss things with me and ... carry on a conversation, so that was not really unusual.” Yet, Dr. Azimi admitted that he could not and did not verify whether any information Wilhite gave in answer to his questions was true, except perhaps Wilhite’s birth date, which could be confirmed by looking in the medical record.
This testimony does not compel a conclusion as a matter of law that Wilhite was mentally competent, either at the time of the screening or, more importantly, on March 31, when the district court found Wilhite to be competent. Even Dr. Nwozo did not want to guess whether Wilhite suffered from a mental disability at the time of discharge from the Deberry hospital facility on April 2 because a “psychiatrist will better make that kind of judgment.”
Defendants, as the moving parties on a motion for summary judgment, carry the burden to demonstrate the absence of any genuine issues of material fact. See Fed. R.Civ.P. 56(a); Heyerman v. Cnty. of Calhoun, 680 F.3d 642, 646 (6th Cir.2012). Their evidence falls far short of this standard. Moreover, based on his affidavits and briefing, Wilhite presumably would testify that he does not remember the details of the assault and that he was not mentally competent between March and June 2008 to “understand his ... legal rights and responsibilities, including the cause of action that [had] accrued.” Sherrill v. Souder, 325 S.W.3d 584, 601 (Tenn. 2010). Wilhite avers that he did not learn the facts about his injury until he returned to HCCF in June 2008 and other prisoners told him what happened. This is fully consistent with the admitted nature of the injuries he suffered in the attack by his cellmate. Moreover, Dr. Nwozo and Dr. Azimi confirmed that they did not discuss *507 with Wilhite any facts relating to the origin of his physical injuries.
Because a jury must hear the evidence on mental competence and claim accrual to decide whether Wilhite missed the statute of limitations by one day, see id. at 599-600,1 would reverse the grant of summary judgment in favor of the defendants and remand for trial. Accordingly, I dissent.

. The date on Dr. Azimi's written report of the screening was earlier than the date Wil-hite was admitted to Deberry. He explained that the screening would have occurred approximately thirty days after Wilhite was admitted in early January 2008.